IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINO FERNANDEZ, | : | Civil No.  4:24-CV-412 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.    Introduction

When considering Social Security appeals we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ) determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff, Gino Fernandez, argues that the Administrative Law Judge erred in failing to recognize that his emotional impairments were *per se* disabling. According to Fernandez this legal error was a product of another error in that the ALJ discounted the sole medical opinion which would have supported a finding of disability as well as his own subjective complaints. However,  after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

2

II.    **Statement of Facts and of the Case**

A. **Procedural History**

While Gino Fernandez has never engaged in substantial gainful employment, he has amassed a substantial litigative history with the Social Security Administration spanning nearly a quarter of a century. This history began in 2010 when Fernandez was found disabled as of August 12, 2008, due to anxiety and mood disorder. (Tr. 76-78). However, after a periodic review in March 2015, it was determined that his medical condition improved and that he was not disabled as of January 1, 2015. (Tr. 88). Fernandez sought review of this determination, an ALJ issued an unfavorable decision in September 2018, and the Appeals Council denied his request for review. (Tr. 85, 105, 106).

B. **Fernandez's Current Disability Application—The Clinical Record**

Approximately two years later, on May 14, 2021, Fernandez filed an application for child's insurance benefits.[2] Fernandez also filed a Title XVI application for supplemental security income on December 14, 2020. (Tr. 15). In this latest application Fernandez alleged that he was disabled due to an array of

---

[2] We note that the ALJ's decision concluded that Fernandez had provided no new evidence to support this childhood disability claim and denied the claim. (Tr. 15-19). Fernandez does not appear to challenge this decision on appeal. Therefore, we will limit our discussion to Fernandez's Title XVI application.

3

emotional impairments, including obsessive compulsive disorder (OCD), opioid dependence/use disorder, anxiety/generalized anxiety disorder (GAD), panic disorder, depressive disorder, and post-traumatic stress disorder. (Tr. 20). Fernandez was born on June 5, 1974 and was 46 years old, which is defined as a younger individual, on the application date for supplemental security income. He had at least a high school education but no prior employment history. (Tr. 26-27).

With respect to Fernandez's presenting emotional impairments:

[T]he record shows that the claimant has been diagnosed with OCD, opioid dependence/use disorder, GAD, panic and depressive disorders, and PTSD (Exhibits D3F; D5F; D7F). The record shows that the claimant was involved in methadone and Suboxone management treatment in 2013 and from 2019 to March 2021 (Exhibits D4F; D5F). Treatment records from Dr. Levinson' office do note psychomotor agitation, fidgeting of hands, and irritable mood (Exhibit D3F/13). The claimant was last seen by Dr. Levinson in April 2020 (prior to the protective filing date) (Exhibits D3F; D9F). The claimant had also been seen by Clinical Outcome Group. In follow-up visits from April 2021 to August 2022, the record notes some signs of anxiety (Exhibit D13F). Additionally, during his July 2021 consultative mental status examination, the claimant exhibited an anxious mood and affect, rapid and pressured voice, and mildly impaired attention, concentration, and memory (Exhibit D7F). As such, this evidence supports the limitation to simple, routine tasks, no complex tasks or fast-paced production work, low-stress work environment, occasional interaction with supervisors and co-workers, and no team type setting work or interaction with the public.

Despite these impairments and positive examination findings, during his last visit with Dr. Levinson's office in April 2020, the claimant also exhibited normal speech, normal thought processes and content, cooperative and polite behavior, no hallucinations, suicidal, or

4

homicidal ideation, good insight and judgment, and no gross cognitive deficits (Exhibit D3F/13). In follow-up visits from April 2021 to August 2022, other than some signs of anxiety in September 2021, the claimant still exhibited normal speech and his exams were noted as stable. While there was some concern of overuse, there is no indication of hospital admissions, emergency room visits, or other concerns regarding his use (Exhibit D13F). During his July 2021 consultative mental status examination, he also exhibited adequate expressive and receptive language, fluent speech intelligibility, average intellectual functioning, fair overall presentation, fair insight and judgment, full orientation, cooperative behavior, appropriate eye contact, normal thought processes, and normal motor behavior (Exhibit D7F). Subsequent follow-up visits from September 2022 to January 2023 further note that the claimant was doing well, was stable with his current dose, and had no audible problems (Exhibit D16F).

(Tr. 23-24).

C. **The Opinion Evidence.**

There appears to have been no treating source evidence opining regarding the severity of Fernandez's emotional impairments. Instead, with respect to this issue, there were three medical opinions. Two of these opinions were provided by state agency experts. First, in July of 2021, Dr, Susan Schwartz found that Fernandez was moderately impaired in terms of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (Tr. 136). Dr. Schwartz concluded that Fernandez "is able to carry out very short and simple instructions. The claimant can make simple decisions"; (Tr. 144), "can sustain an ordinary routine without special

supervision"; (Tr. 146), and "is able to meet the basic mental demands to complete 1-2 step tasks on a sustained basis despite the limitations resulting from the claimant's mental health impairment." (Tr. 147).

In April of 2022, on reconsideration Dr. William Anzalone, a second state agency expert, reached similar conclusions regarding the severity of Fernandez's impairments. (Tr. 162). According to Dr. Anzalone: "In spite of a history of difficulty interaction with the general public, the claimant has the ability to get along with others. The clmt is able to meet the basic mental demands of simple skills and/or tasks on a sustained basis despite the limitations resulting from the clmt's impairment(s)." (Tr. 167). Notably, these opinions also considered the only other medical opinion in the record, a consultative opinion of Dr. Leah Bielski. (Tr. 164).

There was one countervailing medical opinion from a consulting examining source. On July 1, 2021, Dr. Leah Bielski conducted a mental status examination of Fernandez. (Tr. 601-08). The results of this examination were mixed, and in some instances contradictory. Thus, relying largely upon Fernandez's self-reports, Dr. Bielski described a number of significant symptoms experienced by the plaintiff. (Tr. 602). However, she also found his presentation to be fair, his speech intelligible and fluent, his thought processes coherent and goal-oriented, his insight and judgment fair, his intellectual functioning to be average, and his memory only mildly

6

impaired. (Tr. 603-04).  Given these equivocal findings, Dr. Bielski concluded that Fernandez was only mildly impaired when it came to simple instructions; moderately impaired in terms of following complex instructions; but markedly impaired with respect to interacting with others and adapting to workplace change. (Tr. 606-07).

## C. The ALJ Hearing and Decision

It was against this equivocal medical backdrop that Fernandez's disability claim came to be heard by the ALJ on February 9, 2023. (Tr. 35-67). Following this hearing, on February 28, 2023, the ALJ issued a decision denying Fernandez's application for benefits. (Tr. 12-34). In that decision, the ALJ first concluded that Fernandez has not engaged in substantial gainful activity since June 5, 1992, the alleged onset date.  (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Fernandez had the following severe impairments: obsessive compulsive disorder (OCD), opioid dependence/use disorder, anxiety/generalized anxiety disorder (GAD), panic disorder, depressive disorder, and post-traumatic stress disorder. (Tr. 20).

At Step 3, the ALJ determined that Fernandez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, stating:

7

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant has been diagnosed with OCD, opioid dependence/use disorder, GAD, panic and depressive disorders, and PTSD (Exhibits D3F; D5F; D7F). However, a consultative mental status examination has further shown mildly impaired memory, but otherwise coherent and goal-directed thought processes, and average intellectual functioning (Exhibit D7F). Additionally, State agency psychological consultants for the Title XVI claim, indicated that the claimant has a moderate limitation in this area (Exhibits D4A; D5A; D8A; D9A). As such, the undersigned determines that the claimant has a moderate limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has a moderate limitation. The claimant reported that his impairments affect his ability to interact with others (Hearing Testimony). However, he also indicated that he remains able to grocery shop in stores once per week (Hearing Testimony). A consultative mental status examination has further shown cooperative behavior, fair overall presentation, normal motor behavior, appropriate eye contact, fluent speech intelligibility, adequate expressive and receptive language, coherent and goal-directed thought processes, fair insight, and fair judgment, despite his anxious mood and affect and rapid and pressured voice (Exhibit D7F). Additionally, State agency psychological consultants for the Title XVI claim indicated that the claimant has a moderate limitation in this area (Exhibits D4A; D5A; D8A; D9A). As such, the undersigned determines that the claimant has a moderate limitation in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant has been diagnosed with OCD, opioid dependence/use disorder, GAD, panic and depressive disorders, and PTSD (Exhibits D3F; D5F; D7F). However, a consultative mental status examination has further shown mildly impaired attention and concentration, but otherwise coherent and goal-directed thought processes, full orientation, and average intellectual functioning (Exhibits D7F). Additionally, State agency psychological consultants for the Title XVI claim indicated that the claimant has a moderate limitation in this area (Exhibits D4A; D5A; D8A; D9A). As such, the undersigned determines that the claimant has a moderate limitation in concentrating, persisting, or maintaining pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported that his impairments affect his ability to interact with others, concentrate, and handle stress (Hearing Testimony). However, he also indicated that he remains able to grocery shop in stores once per week (Hearing Testimony). A consultative mental status examination has further shown cooperative behavior, fair overall presentation, normal motor behavior, mildly impaired attention, concentration, and memory, appropriate eye contact, fluent speech intelligibility, adequate expressive and receptive language, coherent and goal-directed thought processes, full orientation, fair insight, and fair judgment, despite his anxious mood and affect and rapid and pressured voice (Exhibit D7F). Additionally, State agency psychological consultants for the Title XVI claim indicated that the claimant has a moderate limitation in this area (Exhibits D4A; D5A; D8A; D9A). As such, the undersigned determines that the claimant has a moderate limitation in adapting or managing oneself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(Tr. 20-21).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity

("RFC"), considering Fernandez's limitations from his impairment, stating that:

> After careful consideration of the entire record, since the protective
> filing date of December 14, 2020, the undersigned finds that the
> claimant has the residual functional capacity to perform a full range of
> work at all exertional levels but with the following nonexertional
> limitations: The claimant can do simple, routine tasks but no complex
> tasks in low stress work environment defined as occasional decision
> making and occasional changes in work setting. The claimant can have
> no fast-paced production work such as conveyor belt or quota-based
> work. The claimant is limited to occasional interaction with supervisors
> and coworkers, but no team type setting work and no interaction with
> public.

(Tr. 22).

Specifically, in making the RFC determination, the ALJ considered the

clinical evidence, the medical opinions, and Fernandez's self-described activities. In

particular, with respect to the medical opinions the ALJ observed that:

> The undersigned also considered the opinions of the State agency
> psychological consultants at the initial and reconsideration levels for
> the Title XVI claim, who both indicated that the claimant has the
> following mental functioning limitations: moderate in understanding,
> remembering, or applying information; moderate in interacting with
> others; moderate in concentrating, persisting, or maintaining pace; and
> moderate in adapting or managing oneself. At the initial level, the
> consultant also indicated that the claimant can understand, retain, and
> follow simple instructions; perform simple, routine, and repetitive tasks
> in a stable environment; carry out very short and simple instructions;
> make simple decisions; would not require special supervision in order
> to sustain a routine; perform the personal care functions needed to
> maintain an acceptable level of personal hygiene; is capable of asking
> simple questions and accepting instruction; sustain an ordinary routine

without special supervision; function in production oriented environments requiring little independent decision making. At the reconsideration level, the consultant also indicated that the claimant can understand, retain, and follow simple job instructions; is able to carry out very short and simple instructions; understand and remember simple, one and two step instructions; function in production-oriented jobs requiring little independent decision making; perform simple, routine, repetitive tasks in a stable environment; perform the personal care functions needed to maintain an acceptable level of personal hygiene; and capable of asking simple questions and accepting instruction (Exhibits D5A; D9A).

The undersigned finds these opinions persuasive, as they are supported by and consistent with the medical evidence of record and activities of daily living previously discussed. Specifically, although the claimant has been diagnosed with OCD, opioid dependence/use disorder, GAD, panic and depressive disorders, and PTSD, the evidence does not show any inpatient psychological treatment around or since the protective filing date, his consultative mental status examination despite anxiety with rapid pressured speech had findings that included cooperative behavior, fair overall presentation, normal motor behavior, mildly impaired attention, concentration, and memory, appropriate eye contact, fluent speech intelligibility, adequate expressive and receptive language, coherent and goal-directed thought processes, full orientation, fair insight, and fair judgment (Exhibit D7F), and he remains able to grocery shop in stores once per week (Hearing Testimony).

After examining the claimant in July 2021, consultative mental status evaluator, Dr. Bielski, Psy.D., indicated that the claimant has mild limitations in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions; moderate limitations in understanding, remembering, and carrying out simple instructions and making judgments on complex work-related decisions; marked limitations in interacting with the public, supervisors, and co-workers; and marked limitation in responding appropriately to usual work situations and to changes in a routine work setting (Exhibit D7F/8-9). The undersigned finds this opinion only

11

partially persuasive. Specifically, the mild-to-moderate limitations in the claimant's ability to understand, remember, and carry out instructions is supported by Dr. Bielski's own examination findings of only mildly impaired attention, concentration, and memory and otherwise average intellectual functioning and coherent and goal-directed thought processes (Exhibit D7F/5-6). Additionally, these limitations are consistent with and supported by the other medical evidence of record that shows no history of inpatient psychological treatment within the last few years, and stability of his mental impairments, along with the opinions of the State agency psychological consultants (Exhibits D13F; D16F). That said, the marked limitations are not consistent with or supported by this evidence of record. The progress notes since April 2021, only indicated one time he had anxiety, and even at that time maintained normal speech. Overall, the progress notes through January 2023, noted he was stable. Additionally, these marked limitations are not even fully supported by Dr. Bielski's own examination findings of cooperative behavior, fair overall presentation, normal motor behavior, appropriate eye contact, fluent speech intelligibility, adequate expressive and receptive language, coherent and goal-directed thought processes, full orientation, fair insight, and fair judgment, despite his anxious mood and affect and rapid and pressured voice (Exhibit D7F/5-6). As such, the undersigned finds the marked limitations to be unpersuasive.

(Tr. 24-25).

Having arrived at this RFC assessment, the ALJ found at Step 5 that there were jobs which existed in substantial numbers in the national economy which Fernandez could perform. (Tr. 28-29). Accordingly, the ALJ concluded that Fernandez did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Fernandez contends that the ALJ erred in assessing the medical opinion evidence and failed to recognize that he was *per se* disabled due to his emotional impairments. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

13

1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial

review. Simply put, "this Court requires the ALJ to set forth the reasons for his

decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable
> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the

ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is

sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim

made here, based upon alleged inadequacies in the articulation of a claimant's

mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the

United States Court of Appeals recently addressed the standards of articulation that

apply in this setting. In Hess, the court of appeals considered the question of whether

an RFC, which limited a claimant to simple tasks, adequately addressed moderate

16

limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B. __Initial Burdens of Proof, Persuasion, and Articulation for the ALJ__

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3)

18

whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

19

assessment from a physician regarding the functional abilities of the claimant."
Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)
(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.
Mar. 4, 2013)). In other instances, it has been held that: "There is no legal
requirement that a physician have made the particular findings that an ALJ adopts
in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11
(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any
credible medical opinion supporting a claimant's allegations of disability that "the
proposition that an ALJ must always base his RFC on a medical opinion from a
physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D.
Pa. 2015).

These seemingly discordant legal propositions can be reconciled by
evaluation of the factual context of these decisions. Those cases which emphasize
the importance of medical opinion support for an RFC assessment typically arise in
the factual setting where a well-supported medical source has identified limitations
that would support a disability claim, but an ALJ has rejected the medical opinion
which supported a disability determination based upon a lay assessment of other
evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate
the commonplace idea that medical opinions are entitled to careful consideration

when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this

burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined

medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at

*5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions.

Judicial review of this aspect of ALJ decision-making is still guided by several

settled legal tenets. First, when presented with a disputed factual record, it is well-

established that "[t]he ALJ – not treating or examining physicians or State agency

consultants – must make the ultimate disability and RFC determinations." Chandler

24

v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating

medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence

for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision

is accompanied by an adequate, articulated rationale, it is the province and the duty

of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without
> crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);
> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that
> "SSR 96–2p does not prohibit the ALJ from crediting some parts of a
> treating source's opinion and rejecting other portions"); Connors v.
> Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June
> 10, 2011). It follows that an ALJ can give partial credit to all medical
> opinions and can formulate an RFC based on different parts from the
> different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–
> 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is

no evidence of any credible medical opinion supporting a claimant's allegations of

disability "the proposition that an ALJ must always base his RFC on a medical

opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D. **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc.

<u>Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is well settled in

27

the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security

Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9

(M.D. Pa. Sept. 30, 2015); <u>George v. Colvin</u>, No. 4:13–CV–2803, 2014 WL
5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### E. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Fernandez's appeal of this adverse decision faces a series of interlocking
obstacles. First, by arguing that the ALJ erred at Step 3 by failing to find that he was
per se disabled, Fernandez faces a daunting burden of proof and persuasion.
At Step 3 of this sequential analysis, the ALJ is required to determine whether,
singly or in combination, a claimant's ailments and impairments are so severe that
they are *per se* disabling and entitle the claimant to benefits. As part of
this step three disability evaluation process, the ALJ must determine whether a
claimant's alleged impairment is equivalent to a number of listed impairments,
commonly referred to as listings, that are acknowledged as so severe as to preclude
substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt.
P, App. 1; <u>Burnett</u>, 220 F.3d 112, 119.

In making this determination, the ALJ is guided by several basic principles
set forth by the social security regulations and case law. First, if a claimant's
impairment meets or equals one of the listed impairments, the claimant is considered
disabled *per se* and is awarded benefits. 20 C.F.R. § 416.920(d); <u>Burnett</u>, 220 F.3d
at 119. However, to qualify for benefits by showing that an impairment, or

combination of impairments, is equivalent to a listed impairment, a plaintiff bears

the burden of presenting "medical findings equivalent in severity to *all* the criteria

for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990);

20 C.F.R. § 416.920(d). An impairment, no matter how severe, that meets or equals

only some of the criteria for a listed impairment is not sufficient. Id.

Moreover, while the ALJ's treatment of this issue must go beyond a summary

conclusion, since a bare conclusion "is beyond meaningful judicial review," Burnett,

220 F.3d at 119, case law "does not require the ALJ to use particular language or

adhere to a particular format in conducting his analysis. Rather, the function ... is to

ensure that there is sufficient development of the record and explanation of findings

to permit meaningful review." Jones, 364 F.3d at 505. This goal is met when the

ALJ's decision, "read as a whole," id., permits a meaningful review of the

SLJ's Step 3 analysis.

In addition, this question of *per se* disability is judged as a general matter

under a deferential standard of review. In this setting, we are mindful that we are not

free to substitute our independent assessment of the evidence for the ALJ's

determinations. Rather, we must simply ascertain whether the ALJ's decision is

supported by substantial evidence, a quantum of proof which is less than a

preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S.

at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565.

Finally, when addressing the ALJ's duty of articulation with regard to a claimant's emotional limitations, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the decision by the ALJ that Fernandez was not disabled. Therefore, we will affirm this decision.

In reaching this result we note at the outset, that to the extent Fernandez argues that the ALJ failed to sufficiently explain her Step 3 findings, this argument fails in light of the thorough analysis conducted here. The ALJ's decision provided a careful,

and complete, articulation of the reasons why Fernandez had not established a *per se* disability at Step 3. Drawing upon the clinical record, Fernandez's activities of daily living and the greater weight of the persuasive medical opinion evidence  the ALJ determined that Fernandez had not proven that he met all of the pertinent listing criteria. This conclusion was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. There was no error here.

Nor was the ALJ required to uncritically accept Fernandez's subjective reports regarding the severity of his symptoms when engaging in this Step 3 evaluation. Quite the contrary, the ALJ was obliged to assess those subjective reports in light of the clinical evidence, Fernandez's activities of daily living, and the medical opinion evidence.  In this case, that analysis yielded a conclusion that Fernandez's complaints were only partially credible and did not satisfy the exacting standards prescribed at Step 3.

Finally, Fernandez contends that the ALJ erred at Step 3 in assessing the medical opinion evidence and specifically argues that the ALJ should have been bound by the extreme opinion of Dr. Bielski that he suffered from multiple marked impairments. This final argument fails both as a matter of law and as a matter of fact.

First, as a matter of law, it is clear that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." <u>Chandler</u>, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence, "[a]n ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." <u>Durden</u>, 191 F.Supp.3d at 455. Moreover, "[s]tate agent opinions merit significant consideration," in this disability analysis.  <u>Chandler</u>, 667 F.3d at 361.

In the final analysis, the ALJ's decision in this case, which found Dr. Bielski's opinion that Fernandez experienced multiple marked impairments to be unpersuasive, was entirely consistent with settled caselaw, which holds that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, it is well-settled that an ALJ offers a valid explanation for a simple task RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 214 (3d Cir. 2019). The

34

ALJ fulfilled this duty here when she explained that these most extreme findings by Dr. Bielski were inconsistent with clinical records, the plaintiff's activities living, and other more persuasive medical opinions. Substantial evidence supported the ALJ's conclusions in this regard. Thus, there was no error here.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

IV.  **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.


<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: May 15, 2025

36